UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO
CIVIL ACTION NO. 4:05CV-00068-JHM

JIMMY HANOR and
PATTYE HANOR                                                                PLAINTIFFS


VS.


COUNTRYWAY INSURANCE COMPANY
d/b/a Agway Insurance Company                                               DEFENDANT


<u>MEMORANDUM OPINION AND ORDER</u>

  Before the Court is Plaintiffs' Motion to Compel Production of Documents with the

Witness (DN 28), Defendant's Response (DN 31) objecting to the motion, and Plaintiffs' Reply (DN

34) to the Response.  Apparently not believing its response objecting to Plaintiffs' motion was

sufficient, Defendant has also identified its Response (DN 31) as a Motion for Protective Order

which has also been docketed as DN 34, this latter motion being excessive.  The matter is ripe for

ruling.


BACKGROUND

  Plaintiffs own a 1989 John Deere Tractor and a Great Plains planter, farm machinery

that was loss insured by the Defendant during the relevant time period.  On June 9, 2003, Plaintiffs

discovered the tractor and planter were damaged by someone introducing the chemical pesticide

Atrazine into the hydraulic system of each machine.

  While the dispute focuses more upon the tractor, both pieces of equipment are the

subject of Plaintiffs' lawsuit.  There seems to be no issue that coverage for the loss actually exists,

and Defendant must pay Plaintiffs the repair cost of the insured equipment at the time the loss

occurred unless that cost exceeds the actual cash value of the equipment.  In that event Defendant must pay Plaintiffs the actual cash value of the equipment.

The "coverage" dispute is very simple.  Plaintiffs take the position the two pieces of machinery in question cannot be repaired for a sum less than the actual cash value of each machine, whereas Defendant takes the position each machine can be repaired for a sum less than actual cash value.  This dispute over cost-of-repair versus actual cash value is the <u>only</u> "coverage" dispute.

Plaintiffs have also brought a "bad faith" claim against Defendant, this claim having been bifurcated from the coverage claim, with discovery on the bad faith issue being stayed pending resolution of coverage issue (See DN 8 for Order).

The actual cash value of the planter is approximately $1600 whereas the actual cash value of the tractor appears to be between $30,000 and $35,000, a matter in dispute.

Right after the loss occurred the Plaintiffs apparently procured a cost-of-repair estimate from their shop, Hutson's Ag, for $1,429.26 for the planter and $17,010.00 for the tractor.  Based upon this estimate, Defendant made an initial offer of $16,925.14, which, according to Defendant, represented the cost of repair of both machines, less the insured's deductible and depreciation.  Plaintiffs rejected this offer refusing to accept anything less than actual cash value for both machines.

On October 22, 2003, Defendant, by way of compromise, agreed to forego depreciation on the machinery and offered $17,939.66, again an offer rejected by Plaintiffs stating their belief the equipment was damaged beyond repair and demanding actual cash value.

In December 2003, Defendant sought a second repair estimate for the tractor alone from a different John Deere Dealership, French's Implement Co., this estimate coming in at

$14,938.09, slightly over $2000 less than the original Hutson's Ag estimate.

In January, 2004, Plaintiffs secured another cost of repair estimate from McLean Implement Co. For $24,434.00.  On February 9, 2004, Defendant restated its last offer of $17,939.66, which Plaintiffs continued to reject in favor of a settlement for actual cash value.

Then in February, 2004, Hutson's Ag apparently tore the tractor completely down to examine it for damage, and now estimated the tractor could be completely repaired for $79,534.73.  There is a dispute whether this tear-down was approved by Defendant which claims it did not authorize this be done.  Plaintiffs claim Defendant did in fact approve the tear down. Again, the Plaintiffs insisted the tractor and planter be completely "totaled out".

In early March, 2004, Defendant assigned this claims file to Charles Paul with its Special Investigation Unit in a final effort to settle the claim with the Hanors.  On April 14, 2004, Chris Lorimar, property claims adjuster for Defendant wrote the Hanors, again extending the same $17,939.66 offer to settle.  On April 28, 2004 Charles Paul wrote the Hanors indicating he had entered the picture and was "attempting to clarify several issues with respect to the tractor involved" and that Countryway was continuing to investigate the claim.  Paul wrote the Hanors again on May 25, 2004 again advising the Defendant was "investigating this matter further."

At the same time Charles Paul began work on the claim, the Defendant also referred this matter to counsel David Barnes who is presently counsel of record for the Defendant in this action.  This is apparent from the content of the file provided to the Court for *in camera* inspection. Mr. Barnes undertook to advise Charles Paul and other personnel relative to the Hanors' claim, and any further processing of the claim.

Finally, on July 26, 2004, Paul wrote the Hanors indicating the "additional

investigation" had been completed, outlining the additional investigation, and concluding with a final offer of $17,939.66, an offer that had been restated repeatedly to the Hanors since the previous October. Paul wrote the Hanors again on November 14, 2004, reiterating the offer, but apparently only because the Hanors failed to respond to the July 26, 2004 offer from the Defendant.

This lawsuit followed on April 1, 2005, with a complaint filed in the Webster Circuit Court and subsequently removed here. On March 20, 2006, Plaintiffs' counsel gave notice to Defendant for the taking of the deposition of Charles Paul (Ex 5 to Plaintiffs' Motion at DN 28). This notice contained the following language: "Pursuant to Rule 34 of the Fed.R.Civ.Proc., the deponent is requested to produce his entire original file in regard to this matter..."

At the appointed hour of 9:30 a.m., April 25, 2006, Paul appeared in Louisville at Plaintffs' counsel's offices. Pursuant to instructions from Defendant's counsel, he produced the Defendant's claims file through March 1, 2004, but refused to produce any portion of the claims file developed thereafter, the point in time where Paul became personally involved in attempting to investigate and settle the matter and Barnes had been brought in to provide legal advice. Plaintiffs' counsel then refused to complete Paul's deposition, opting to approach the Court first with this motion to compel.

DISCUSSION

The issue here is whether the Defendant should be required to produce to Plaintiffs that portion of the claims file generated after Special Investigator Paul and Counsel Barnes became involved in the Hanors' claim, approximately March 1, 2004.

Plaintiff claims the entire file to be relevant and Defendant resists production of any material after March 1, 2004, on the basis that the material sought, while relevant to the "bad faith"

4

issue is in no way relevant to the coverage issue. Defendant further claims the material is protected by the work-product protection rule and the attorney-client privilege.

Following the briefing of the motion the undersigned directed the Defendant to provide a copy of the claim file to the undersigned's chambers for *in camera* inspection, as well as a privilege log. The undersigned has thoroughly examined the material Defendant seeks to withhold as well as material actually provided to Plaintiffs from the claims file.

Despite Defendant's protest, there are claim file documents that are "relevant to the claim or defense" of the parties involved. Fed.R.Civ.P. 26(b)(1). As previously noted, the only matter at issue on the question of coverage is whether the cost of repair of the two farm machines exceed their actual cash value. Realistically, it would seem the cost of repair of the tractor is the true bone of contention.

Any claims file material dealing with this cost of repair issue, unless otherwise protected, is fair game for discovery. When Charles Paul entered the claims picture, he undertook to perform "additional investigation" of this issue as he outlined in letters to the Hanors dated April 28, 2004 and then again on May 25, 2004. It was not until he wrote the "final offer" letter to the Hanors on July 26, 2004, did he close out this additional investigation. In examining the file submitted to the undersigned for *in camera* inspection, it is apparent the further investigation consisted largely of backtracking to reexamine work already performed - to be sure the Defendant had not overlooked something important. But that does not signify a lack of relevance, just that it may not provide added enlightenment with respect to potential trial evidence.

For the period through July 26, 2004, the claims file contains additional investigative material which must be made available to Plaintiffs as relevant to their claim and Defendant's

5

defenses.  Although counsel was involved during this time, added investigation of the claim was apparent.  It cannot be said that material developed during this time frame was done in anticipation of litigation even though the Defendant had doubts the matter could be resolved short of litigating. Claims file activity after this date will be protected as prepared in anticipation of litigation.

There are materials, however, generated within the claims file during the period of time from March 1, 2004 through July 26, 2004, the period of time in question, that must be afforded the attorney-client privilege.  These involve communications, or notes of communications, between counsel David Barnes and Charles Paul, or other persons for the purpose of the rendition of legal services by Mr. Barnes.  These will be redacted.

In all, the Defendant submitted 155 pages of material for the Court's consideration. The documents Bates stamp numbered 1 through 11, 23 through 88, 91, 92, 95, 96, and 130 through 155 need not be produced as they fall outside the time period March 1, 2004 through July 26, 2004, deserve attorney-client protection, or involve court pleadings or other materials obviously in Plaintiffs' possession such as letters directed by Defendant to Plaintiffs.

The Activity Logs in numbers 12 though 22 must be produced but Defendant may redact those portions of these pages which the Court has highlighted with yellow Hi-Liter as these passages involve communications to, from or about counsel David Barnes' communications [These pages will be mailed directly from the undersigned's chambers to counsel for the Defendant.].  If the Court has inadvertently omitted a passage pertaining to communications from or to counsel David Barnes, Defendant should bring this to the Court's attention prior to submission to Plaintiffs. It is the Court's intent to protect all such material.

Defendant shall also produce pages 89, 90, 93, 94, and 97 through 129.  These

6

documents must be produced by Defendant to Plaintiffs not later than fourteen (14) days from entry of this Order.

NOW THEREFORE IT IS HEREBY ORDERED that:

(1) Plaintiffs' Motion to Compel (DN 28) is GRANTED in part and DENIED in part;

(2) Defendant's Motion for Protective Order (DN 34) is GRANTED in part and DENIED in part;

(3) As for the place of the retaking of the deposition of Charles Paul, the Court notes Defendant was under no obligation to produce him in Louisville in the first place.  Discovery Practice, 3rd Ed., Haydock & Herr, Section 3.1.7.

Copies:        Counsel